UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONALD R. BORGART,

                      Plaintiff,

       v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                      Defendant.

**DECISION
and
ORDER**

**18-CV-1139F**
(**consent**)

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER, PLLC
                           Attorneys for Plaintiff
                           KENNETH R. HILLER, and
                           JEANNE ELIZABETH MURRAY, of Counsel
                           6000 North Bailey Avenue
                           Suite 1A
                           Amherst, New York 14226

                           JAMES P. KENNEDY, JR.
                           UNITED STATES ATTORNEY
                           Attorney for Defendant
                           Federal Centre
                           138 Delaware Avenue
                           Buffalo, New York 14202
                                  and
                           PADMA GHATAGE
                           Special Assistant United States Attorney, of Counsel
                           Social Security Administration
                           Office of General Counsel
                           26 Federal Plaza - Room 3904
                           New York, New York 10278
                                  and
                           DENNIS J. CANNING, and
                           PAMELA McKIMENS
                           Special Assistant United States Attorneys, of Counsel
                           Social Security Administration
                           Office of General Counsel
                           601 East 12th Street – Room 965
                           Kansas City, Missouri 64106

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On October 7, 2019, the parties to this action, in accordance with a Standing Order, consented pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned. (Dkt. 14). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on May 31, 2019 (Dkt. 9), and by Defendant on July 30, 2019 (Dkt. 12).

**BACKGROUND**

Plaintiff Ronald R. Borgart ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on June 4, 2015, 2016, for Social Security Disability Insurance benefits ("SSDI"), and for Supplemental Security Income benefits ("SSI") under, respectively, Titles II and XVI of the Act ("disability benefits"). Plaintiff alleges he became disabled on July 5, 2014, based on right knee problems, arthritis, heartburn, allergies, recommended knee replacement, oblique tear in medial meniscus, degenerative change in medial compartment, marginal osteophyte (bone spur), sprain of medial collateral ligament, baker's cyst, and pain in elbow. AR[2] at 176, 181, 206, 210. Plaintiff's applications initially were denied on August 18, 2015, AR at 117-22, and at Plaintiff's timely request, an administrative hearing was held on November 9, 2017, in Buffalo, New York before administrative law judge Sharon Seeley ("the ALJ). AR at 44-94. Appearing and testifying at the hearing were Plaintiff,

---

[2] References to "AR" are to pages of the Administrative Record electronically filed by Defendant on March 7, 2019. (Dkt. 5).

2

represented by his then attorney Jeanne Murray, Esq., and vocational expert Dawn Blythe ("V.E."). At the hearing, Plaintiff advised he was amending his disability benefits application to seeking disability benefits for the closed period July 5, 2014 to February 1, 2016, when Plaintiff returned to work. AR at 47.

On January 10, 2018, the ALJ issued a decision denying Plaintiff's claim, AR at 18-34 ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council, AR at 170-73. On August 23, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-7. On October 16, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On May 31, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 9) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum"). On July 30, 2019, Defendant moved for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching the Commissioner's Brief in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 on Social Security Cases (Dkt. 12-1) ("Defendant's Memorandum"). Filed on August 19, 2019, was Plaintiff's Response to Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

3

# **FACTS**[3]

Plaintiff Ronald R. Borgart ("Plaintiff" or "Borgart"), born July 21, 1966, was 47 years old as of July 5, 2014, his alleged disability onset date ("DOD"), and 49 years old as of February 1, 2016, the date Plaintiff returned to work. AR at 30, 47, 206. Plaintiff graduated high school where he attended regular classes, and has college degrees including an associate's degree and a bachelor's degree. AR at 53-54, 211. Plaintiff has not had a driver's license in more than 10 years following an impaired driving arrest. AR at 53. Plaintiff lives in a house in Lakeview, New York, with his mother to whom Plaintiff provides daily care. AR at 52, 74. Until his knee impairment, Plaintiff performed all the housework and household chores, AR at 78-79, many of which Plaintiff was unable to do after sustaining his knee impairment. AR at 80-81.

Since 1984, Plaintiff worked as a carpenter in building maintenance and construction, but stopped working on July 15, 2014, when Plaintiff, because of his alleged impairments, walked off a construction job, only to return a few days later seeking work, but his former employer would not rehire Plaintiff. AR at 54, 65-66, 76, 210-11. Plaintiff immediately sought other construction work but was unsuccessful. AR at 66, 75. After a break of some time, Plaintiff resumed looking for work in September 2015, when his knee impairment began to improve, AR at 63, eventually returning to work on February 1, 2016, as head of maintenance at a local church where, *inter alia*, Plaintiff lifts desks, tables, and chairs, weighing up to 50 lbs., sometimes with help from others, installed floor tiles, and maintains the boiler. AR at 47, 55-57.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

It is undisputed that although Plaintiff alleges July 5, 2014 as his DOD, the administrative record is devoid of any medical evidence of his alleged impairments prior to May 1, 2015, which Plaintiff attributes to a lack of insurance. AR at 50-51. On May 1, 2015, upon obtaining insurance, Plaintiff commenced treatment with Peter McQuiller, M.D. ("Dr. McQuiller") of WNY Medical, PC, in Derby, New York, and diagnostic tests for Plaintiff's right knee pain were ordered, including a May 5, 2015 X-ray, and a May 15, 2015 MRI. AR at 295-320. Plaintiff was referred to orthopedic surgeon David A. Pula, M.D. ("Dr. Pula"), who, on June 22, 2015, examined and evaluated Plaintiff, describing Plaintiff's X-ray as showing near full-thickness medial compartment loss, and the MRI as showing degenerative changes including a meniscus tear on the medial aspect, degenerative changes of the anterior cruciate ligament ("ACL"), and possible disruption of the posterior cruciate ligament ("PCL"). AR at 321-29. Dr. Pula diagnosed right knee osteoarthritis, medial meniscus tear, and PLC tear, AR at 328, discussed with Plaintiff a home strengthening program with exercises, as well as cortisone injections although Plaintiff was not then complaining of much pain, and Dr. Pula did not find Plaintiff to be a candidate for reconstructive or arthroscopic surgery at that time. AR at 328-29.

On August 24, 2015, Plaintiff commenced treatment for his right knee at Excelsior Orthopaedics ("Excelsior") where he was examined by Lisa Daye, M.D. ("Dr. Daye") who drained Plaintiff's right knee and administered a cortisone injection. AR at 359-61. On September 23, 2015, Plaintiff returned to Excelsior where Andrew C. Stoeckl, M.D. ("Dr. Stoeckl"), aspirated Plaintiff's right knee and administered another cortisone injection. AR at 365-67, 406-07. On December 9, 2015, Plaintiff returned to Excelsior reporting the cortisone injections significantly improved his symptoms, and

Plaintiff was to return for another injection in three to four weeks. AR at 368-70. Plaintiff received his next injection on February 3, 2016, after he resumed working. AR at 371-73.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2. Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

7

423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff met the insured status requirement for SSDI through December 31, 2020, AR at 23, has engaged in substantial gainful activity from January 28, 2016 through the date of the ALJ's decision, January 10, 2018, *id.*, at 23-24, but did not engage in substantial gainful activity for a continuous period of more than 12 months from July 5, 2014, through January 27, 2016, the period of time relevant to this action. *Id.* at 24. The ALJ further found Plaintiff, during the relevant period, had medically determinable impairments including right knee osteoarthritis, and history of

left elbow bursitis and infection, *id.*, but that Plaintiff did not have an impairment or combination of impairments that limited Plaintiff's ability to perform basic work activities for 12 consecutive months such that Plaintiff did not have a severe impairment as defined under the relevant regulations, *id.* at 24-29, and thus was not disabled as defined under the Act from July 5, 2014, through the date of the ALJ's decision. AR at 29-30. In support of his motion, Plaintiff argues the ALJ erred in failing to find at step two of the five-step analysis that Plaintiff's right knee osteoarthritis was not a severe impairment, and subsequently failing to proceed to the remaining steps of the sequential analysis. Plaintiff's Memorandum at 13-20. In opposition, Defendant argues the ALJ properly found, based on substantial evidence in the record, that Plaintiff's right knee impairment did not significantly limit Plaintiff's ability to perform basic work activities during the relevant period and thus did not, by definition, constitute a severe impairment. Defendant's Memorandum at 8-12. In reply, Plaintiff maintains Defendant merely offers post-hoc rationalizations and does not address Plaintiff's arguments. Plaintiff's Reply at 1-2. Plaintiff's arguments are without merit.

Preliminarily, the court observes that Plaintiff's arguments challenge only the ALJ's assessment that Plaintiff's right knee osteoarthritis was not a severe impairment because there is no evidence in the record the impairment significantly impaired Plaintiff's ability to perform basic work activities. The mere presence of a medically determinable impairment does not, by itself, establish the condition is considered severe under the Act which defines a severe impairment as one that significantly limits the claimant's ability to perform basic work activities, including such physical functions as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. 20

9

C.F.R. § 404.1522. Furthermore, if the claimant is unable to show at step 2 that he has a medically severe impairment, the claimant is not eligible for benefits and the ALJ need not consider the rest of the sequential analysis. *Bowen v. Yuckert*, 482 U.S. 137, 148 (1987).

Although Plaintiff indicates July 5, 2014 as his DOD, Plaintiff sought no treatment for his right knee until May 1, 2015, at which time the record fails to support that Plaintiff's knee impairment was severe. Rather, Plaintiff's medical records show that during the relevant period, Plaintiff walked with a normal gait, strength was intact, and there was no instability. *See, e.g.*, AR at 298 (Dr. McQuiller reporting following May 1, 2015 examination that Plaintiff walked with normal gait for his age, motor strength was intact, and no instability). At an August 3, 2015 consultative internal medical examination by Donna Miller, D.O. ("Dr. Miller"), Plaintiff was in no apparent distress, used no assistive device, walked with a normal gait, could walk on heels and toes without difficulty, squat to 75%, stance was normal, needed no assistance changing for the examination or getting on and off the examination table, and rose from a chair without difficulty, had some decreased range of motion of his right knee, but joints were stable and nontender, with no redness, heat, swelling or effusion. AR at 330-34. Dr. Miller diagnosed Plaintiff with right knee pain and opined Plaintiff had mild to moderate limitation to repetitive kneeling and squatting. *Id*. The ALJ observed that Dr. Miller's findings were largely consistent with those of orthopedic surgeon John L. O'Donnell, M.D. ("Dr. O'Donnell"), who examined Plaintiff on April 16 and 21, 2014, prior to Plaintiff's alleged DOD, in connection with Plaintiff's complaints of acute onset left elbow bursitis and right knee soreness. AR at 469-73. Plaintiff was treated only for his elbow

10

complaints, and on April 21, 2014, Dr. O'Donnell opined Plaintiff had mild varus of the right knee (condition causing knee to turn outward), mild swelling, medial palpable articular spurs at the tibiofemoral joint, but no effusion and the knee was stable. AR at 470. Dr. O'Donnell released Plaintiff to work without restrictions. AR at 471.

In applying for disability benefits, Plaintiff indicated he cooked and cleaned daily, did laundry, and shopped as needed, showers and dresses daily, watches television and sports, does woodworking in his garage, listens to the radio, and reads, attends sporting events, family gatherings, and barbeques. AR at 222, 224, 225, 226, 231. These activities of daily living are consistent with those reported to Dr. Miller on August 3, 2015. AR at 330-31. Plaintiff also maintains he moved in with his mother to take care of her following his father's death. *Id.*

The ALJ further found Plaintiff's own testimony was inconsistent with the assertion that Plaintiff left work on July 5, 2014 because of his right knee impairment, with Plaintiff testifying that at his last job he reported to his brother-in-law whom Plaintiff described as a "hothead," that Plaintiff was being "picked on" for working too slow, causing Plaintiff to become angry and to walk off the job, intending to only take off for a few days, but upon returning, Plaintiff's brother-in-law refused to allow Plaintiff to work, advising he considered Plaintiff to have quit his job. AR at 27-28 (citing AR at 61-62, 64-66). The ALJ further considered the fact that Plaintiff then applied for unemployment benefits, albeit unsuccessfully, indicates Plaintiff considered himself able to work, which is also consistent with Plaintiff's further hearing testimony that he immediately began looking for other employment. AR at 28 (citing AR at 69-70). Plaintiff makes no attempt to explain these significant inconsistencies.

Given the dearth of evidence demonstrating Plaintiff's knee impairment significantly impaired Plaintiff's ability to perform basic work activities for at least 12 consecutive months, the ALJ did not err in failing to consider Plaintiff's right knee impairment to be severe at step 2. The ALJ's decision therefore is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion (Dkt. 12) is GRANTED. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     March 30th, 2020
                Buffalo, New York